IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NOVA OCULUS PARTNERS, LLC, and NOVA OCULUS CANADA MANUFACTURING, ULC, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Case No.:  5:23-cv-00451 |
| ALFONSO SALAZAR and ABARLA TECHNOLOGIES, INC., | § § § | |
| *Defendants*. | § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT AND APPLICATION FOR
TEMPORARY INJUNCTION AND PERMANENT INJUNCTION**

Plaintiffs **Nova Oculus Partners, LLC** ("Nova LLC") and N**ova Oculus Canada Manufacturing, ULC** ("Nova Canada") (collectively "Nova" or "Plaintiffs") file this Original Complaint and Application for Temporary Injunction, and Permanent Injunction against **Alfonso Salazar** ("Salazar") and **Abarla Technologies, Inc.** ("Abarla") (collectively "Defendants") and respectfully show the Court as follows:

## I.    PARTIES

1.    Plaintiff Nova Oculus Partners, LLC is a Delaware limited liability company.

2.    Plaintiff Nova Oculus Canada Manufacturing, ULC is a British Columbia, Canadian unlimited liability corporation.

3.      Defendant Alfonso Salazar is an individual and a resident of Bexar County, Texas. He may be served <u>at his residence, 1591 County Road 326, Adkins, TX  78101</u>, or wherever else he may be found.

4.      Defendant Abarla Technologies, Inc. is a Texas corporation with its principal place of business in Dallas County, Texas. It may be served <u>through its registered agent, Legalinc Corporate Services, Inc. at its registered address of 10601 Clarence Dr., Suite 250, Frisco, Texas 75033</u>.

## II.   JURISDICTION

### Federal-Question Jurisdiction

5.      Plaintiffs assert claims pursuant to the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C.. § 1836, *et seq.* This Court has original, federal-question jurisdiction over such claims pursuant to 28 U.S.C. § 1331.

### Supplemental Jurisdiction

6.      Because this Court has original, federal-question jurisdiction over Plaintiffs' DTSA claims, it also has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. § 1367. *See Allstate Interiors & Exteriors, Inc. v. Stonestreet Const., LLC*, 730 F.3d 67, 72 (5th Cir. 2013) ("State and federal claims are part of the same case or controversy for the purposes of section 1367(a) if they derive from a common nucleus of operative fact or are such that they would ordinarily be expected to be tried in one judicial proceeding.") (internal quotations omitted).

### Diversity Jurisdiction

7.      Further, or in the alternative, this Court also has original, diversity jurisdiction over all of Plaintiffs' claims pursuant to 28 U.S.C. § 1332.

8.      Defendant Salazar is an individual who is a resident of the State of Texas. Salazar is a citizen of Texas for diversity purposes.

9.      Defendant Abarla is a domestic corporation incorporated in Texas with its principal place of business in the State of Texas. Abarla is therefore a citizen of Texas for diversity purposes. 28 U.S.C. § 1332(c)(1).

10.     Plaintiff Nova LLC is a domestic LLC.  For purposes of diversity jurisdiction, "the citizenship of a LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Nova LLC has only one member, AMC Holding, LLC. AMC Holding, LLC has only one member, Dempsy Trust, LLC. Dempsey Trust, LLC has only one member, Eva Pocklington—an individual who is a resident of the State of California. Nova LLC is therefore a citizen of California for diversity purposes.

11.     Plaintiff Nova Canada is a foreign corporate entity formed under the laws of British Columbia, Canada. Nova Canada is a citizen of a foreign state (Canada) for diversity purposes. *See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 91–92 (2002).

12.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,0000, this Court has original, diversity jurisdiction over all of Plaintiffs' claims pursuant to 28 U.S.C. § 1332.

14.     This Court has personal jurisdiction over each of the Defendants because each of the Defendants are a resident of (with respect to Salazar), or are registered and maintains its principal place of business in (with respect to Abarla), the State of Texas and have purposefully availed

themselves of the privilege of conducting activities in the State of Texas and established minimum contacts sufficient to confer personal jurisdiction in the Western District of Texas.

### III. VENUE

15.     Venue for Plaintiffs' claims is proper in the San Antonio Division of the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Salazar resides within this District and Division and all Defendants are residents of the State of Texas.

16.     Venue for Plaintiffs' claims is alternatively proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and Division and the tangible and intellectual property that Plaintiffs seek to recover from Defendants are currently located within this District and Division.

### IV.   FACTS

17.     Nova is a conglomerate of entities in the medical technology industry offering a pioneering and patented treatment for Age–Related Macular Degeneration ("AMD").

18.     Nova's engineers have spent valuable time and resources designing, developing, and engineering a patented electro–therapeutic device with innovative technology that can be used to treat AMD in a non–invasive procedure. Treatments using this device can potentially extend years of better eyesight to those whose vision is suffering from the early stages of AMD.

19.     Nova began developing this certain AMD technology in 2014. At that time, the domestic entity Nova LLC was known as The Eye Machine, LLC.

20.     On October 10, 2014, Nova LLC (then known as The Eye Machine, LLC) entered into an Option Agreement for Acquisition of Rights Related to Exclusive Medical Equipment and

Technology (the "Option Agreement") with Eye Machine Canada Inc. ("MacuMira").[1] Pursuant to the Option Agreement, MacuMira acquired from Nova LLC the option to hold an exclusive right to use Nova's AMD-treating technology and the operational software included therein (the "AMD Technology") within the country of Canada. In connection with these exclusive usage rights, Nova LLC agreed to lease its AMD Technology to MacuMira for a set annual fee for each medical device provided to MacuMira pursuant to the Option Agreement plus a royalty per treatment. There was also a one-time cost for MacuMira to exercise this exclusivity option.

21.     On or before January 28, 2015 (but after the October 10, 2014 Option Agreement), MacuMira exercised its rights under the Option Agreement and assigned such rights (with the permission of Nova LLC) to a related entity, Eye Machine Canada (Licensing) Corp. ("EMC Canada").

22.     On January 28, 2015, Nova LLC and EMC Canada entered into a licensing agreement (the "Licensing Agreement") pursuant to which Nova LLC granted EMC Canada the exclusive right and license within Canada to lease the AMD Technology from Nova LLC and to market, promote, import, sub-lease, and distribute the AMD Technology through Canada in exchange for a set annual fee plus a royalty per treatment.

23.     On December 23, 2015, the Licensing Agreement was amended (the "First Amending Agreement") to address the development of a further enhancement to the AMD Technology in the form of goggles that better facilitate the use of the AMD Technology in AMD treatment. The First Amending Agreement required an additional annual lease fee per set of goggles plus an additional royalty per hour per goggle.

---

[1] Eye Machine Canada Inc. was renamed as MacuMira Therapeutic Inc. on June 23, 2021 and is therefore referred to as MacuMira in this Petition.

24.     On March 10, 2017, the Licensing Agreement was amended again (the "Second Amending Agreement"), granting MacuMira and EMC Canada a conditional further license to manufacture, or source the manufacturing of, the AMD Technology and corresponding goggles for so long as all other rights and obligations of the Licensing Agreement persisted. However, this conditional license option was never exercised by MacuMira or EMC Canada.

25.     On May 17, 2017, Nova Canada was incorporated under the laws of the Province of British Columbia.

26.     Thereafter, on June 30, 2017, Nova LLC assigned all of its tangible and intangible assets related to the design, manufacture, and distribution of microcurrent devices for the treatment of visual diseases, including the technology and software associated with the AMD Technology (collectively the "Nova Property"), including any rights in related assets and contracts held by Nova LLC in connection with the Nova Property, to Nova Oculus Holding Co., Inc. ("Nova Holdings"), a Delaware corporation wholly owned by Nova LLC. This included all rights under the Licensing Agreement.

27.     Pursuant to a separate property transfer agreement effective the same day, Nova Holdings then assigned all of the Nova Property, including any rights in related assets and contracts held by Nova Holdings in connection with the Nova Property, to Nova Canada, a company wholly owned by Nova Holdings. This transfer again included all rights under the Licensing Agreement.

28.     Following these transfers, Nova LLC no longer holds any direct interest in the Nova Property or any related assets and contracts in connection with the Nova Property (which now all belong to Nova Canada, an entity 100% owned and controlled by Nova Holdings, which in turn is 100% owned and controlled by Nova LLC), but Nova LLC does continue to have the right to certain

payments, repayment of advanced funds, and certain put and call rights arising from the contracts and agreements described in paragraphs 20 and 21 above.

29.    In February 2016, Nova LLC (then still known as The Eye Machine, LLC) began working with Salazar as a Technical Consultant in California.

30.    On or about February 17, 2016, Salazar and Nova LLC executed a "Confidentiality Agreement" in which Salazar, in exchange for acknowledged sufficient consideration, agreed not to "directly or indirectly, use, disseminate, disclose, discuss or reveal, and [to] otherwise treat and maintain in full confidence, any and all Confidential Information related to [him]" by Nova LLC and regarding Nova LLC's "business of developing proprietary technology and equipment for the purpose of treating Macular Degeneration and other diseases and ailments and the commercial sale and marketing thereof."[2]

31.    Salazar was a published academic writer and accomplished inventor who had previously applied for multiple patents in the United States, including United States Provisional Application Serial No. 62/500,190 filed May 2, 2017 for a "DIRECT ELECTRICAL STIMULATION DELIVERY SYSTEM FOR THE TREATMENT OF VISUAL DISEASE." On or about June 16, 2017, Salazar executed an Assignment Agreement with Nova LLC, pursuant to which Salazar assigned all of his rights in this provisional patent to Nova LLC as part of his continuing work with the company and further agreed, among other things, to cooperate with and assist Nova in enforcing Nova's rights to such provisional patent.

---

[2] This business activity is referred to in the Confidentiality Agreement as the "TEM Projects."

32.     In 2018, Nova LLC (then still known as The Eye Machine, LLC) hired Salazar as its Vice-President of Engineering. In that role, Salazar served as the principal designer and engineer of the AMD Technology.

33.     Salazar continued to work for Nova LLC in that capacity until approximately October 2018, when the ongoing working relationship between Salazar and Nova LLC was suspended. Thereafter, in approximately April 2020, Salazar (through his company Abarla) resumed providing engineering and other services to Nova LLC and Nova Canada. Nova continued to utilize Salazar's and Abarla's services as independent contractors until approximately the Summer of 2022.

34.     To seek approval for the commercial sale of its AMD Technology in Canada, Nova participated in a Health Canada-approved clinical trial involving fifty (50) patients suffering from AMD in suburban Vancouver, British Columbia, Canada. The results of the clinical trial were a resounding success and Nova submitted its final report and formal application for approval of its AMD Technology to Health Canada in August 2021.

35.     In approximately August 2021, after the suspension of the working relationship between Salazar and Nova LLC in 2018 but prior to the commencement of Nova LLC's new relationship with Salazar and Abarla as independent contractors, Salazar entered Nova's offices in Palm Springs, California and removed various files, physical documents, and other property belonging to Nova, including AMD Technology. Such property includes and/or contains Nova's proprietary, "Confidential Information" (as defined below), including but not limited to design plans for the AMD Technology, parts and components for the AMD Technology devices, and prototype devices owned by Nova.

36.     Nova did not immediately discover the extent of Salazar's misappropriation of this property because: (1) Salazar was the primary person in the company responsible for design and development of the manufacturing of the AMD Technology until mid-2022; and (2) Nova was not actively in the process of manufacturing the AMD Technology during 2020 and 2021 while it awaited the results of its Health Canada approval for commercial sales.

37.     In November 2022, Nova received notice from Health Canada that its AMD Technology was approved for widespread sales and use in Canada. Nova therefore eagerly began the process of ramping up its business and preparing to produce its AMD Technology on a mass scale.

38.     Around this time, Nova first discovered Salazar's extensive misappropriation from August 2021 of nearly everything Nova needed to engineer and produce the AMD Technology, including the products of all enhancements and improvements to the technology for which Salazar and Abarla were paid between April 2020 and mid-2022. As a result, Nova was forced to begin reverse engineering its own product to obtain design and component information in preparation for further manufacturing.

39.     Further investigation into Salazar's misappropriation then revealed troubling information regarding Salazar's use of Nova's misappropriated property to compete against Nova in the Canadian marketplace.

40.     In December 2022, Nova discovered that on or about October 27, 2020, former officers and directors of Nova Walter O'Rourke ("O'Rourke") and Justin Sather ("Sather"), and an entity owned and controlled entirely by O'Rourke known as Karmastar Consulting Inc. ("Karmastar"), had acted to unlawfully deprive Nova of its rights to the Nova Property in Canada. Specifically, O'Rourke and Karmastar, working together with Sather, unlawfully and secretly

(without the knowledge or consent of Nova) purportedly caused Nova Canada to enter into an Assignment of Inventions and Related Patent Rights with MacuMira (the "Purported Assignment"). Pursuant to this Purported Assignment, Nova Canada allegedly transferred and assigned all of its interest in the Nova Property (including rights in all related patents, trademarks, and software) to MacuMira in "exchange" for certain reduced royalties and fees (significantly lower then the amounts payable by MacuMira under the then-applicable Licensing Agreement, as amended) to be paid in connection with the commercialization of the Nova Property.

41.     On or about September 1, 2022, Nova Canada (again through the unlawful and secretive acts of O'Rourke and Karmaster, working together with Sather) and MacuMira then purportedly entered into an Amended and Restated Assignment of Investments and Related Patent Rights (the "Purported Amended Assignment") which alters the terms of the royalties and fees to be paid by MacuMira.

42.     Also in December 2022, Nova was advised by O'Rourke and other representatives of Salazar and Abarla that Salazar and Abarla had—on separate occasions during 2020, 2021, and 2022—provided Sather and MacuMira access to and extensive use of the Nova AMD Technology and Confidential Information. O'Rourke further informed Nova at this time that Salazar and Abarla were actively working with Sather and MacuMira with design modifications to, and the manufacturing of, the medical devices based on the Nova AMD Technology, and that Sather and/or MacuMira had paid Salazar and/or Abarla "substantial sums."

43.     Upon discovering the Purported Assignment and the Purported Amended Assignment, Nova acted promptly to protect its rights. Nova initiated litigation in Canada against O'Rourke, Karmaster, Sather, and MacuMira on February 16, 2023. Likewise, Nova acted to

demand that Salazar immediately return Nova's property and cease and desist from using or allowing any other to use any misappropriated property.

44.     On February 14, 2023, Nova, through the undersigned counsel, sent its final Cease and Desist and Demand for Return of Property Belonging to Nova Oculus Partners, LLC ("Final Demand") to Salazar, in which Nova demanded the return of "any and all documents, files, electronic data or other material, regardless of its form, in [Salazar's] possession, custody or control that belongs to Nova, including but not limited to Confidential Information and/or proprietary design drawings" by the close of business on February 17, 2023. Salazar failed to comply with, or otherwise respond to, the Final Demand.

45.     Upon information and belief, Salazar is, and has been, acting in concert with O'Rourke, Sather, and/or MacuMira to misappropriate Nova's AMD Technology and other Confidential Information (defined below) and to compete against Nova. Specifically, representatives of Nova have recently been informed by O'Rourke on multiple occasions that Salazar and Abarla were working for Sather and MacuMira between 2020 and 2022 (during the same period that Salazar and Abarla were paid approximately $200,000 by Nova while working as independent contractors for Nova) and that Sather and/or MacuMira has paid Salazar and/or Abarla "substantial sums," believed to be in the hundreds of thousands of dollars.

## V.     CAUSES OF ACTION

46.     Based upon the forgoing, Plaintiffs assert the following causes of action against Defendants. To the extent any cause of action below is duplicative of, or contrary to, any other cause(s) of action, such causes of action are pleaded in the alternative to one another.

<u>COUNT 1</u> – <u>**Misappropriation of Trade Secrets in Violation of the Texas Uniform Trade Secrets Act ("TUTSA")**</u>

47.     Plaintiffs re-allege and incorporate all factual allegations set forth above as if fully set forth herein.

48.     The elements of trade secret misappropriation under TUTSA are: (1) a trade secret existed; (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (3) use of the trade secret without authorization from the Plaintiff.[3]

49.     TUTSA defines "trade secret" as follows:

> 'Trade secret' means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
>
> > (A)  the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
> >
> > (B)  the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code Ann. § 134A.001(6).

50.     Nova developed and owned confidential and proprietary information concerning the AMD Technology and Nova Property which are specific to its business, products, and services, including valuable research and development, technical data, product plans, systems, devices and

---

[3] Tex. Civ. Prac. & Rem. Code Ann. § 134A.002.

component parts thereof, software, inventions, processes, formulas, technology, designs, drawings, engineering, and other related confidential product information related to the AMD Technology and Nova Property (the "Confidential Information.").

51.     Nova spent thousands of hours designing, developing, and engineering its Confidential Information. Nova treated such Confidential Information as proprietary to its business and relied upon such Confidential Information to set itself apart from its competitors in the marketplace, which could obtain a significant advantage by gaining access to the Confidential Information and using it to compete against Nova without having to spend the time, energy, and resources to develop this Confidential Information on their own.

52.     Nova did not share this Confidential Information with the public or its competitors, but kept such Confidential Information secure at all times relevant to this Complaint. Specifically, Nova employed the following steps to secure its Confidential Information from disclosure:

- **Physical Barriers:**  Nova keeps its Confidential Information in secured facilities with physical locks on the doors and controls access to those locked facilities, with keys accessible only to manager-level employees.

- **Digital Protections:**  Nova also keeps Confidential Information digitally, including trademarks, patents, clinical final reports, and other data in a secured ShareVault account with password protection. Only the company's CEO can grant access to the ShareVault account and information in the ShareVault account is controlled by specific permissions granted to employees only on an as-needed basis.

53.     Salazar improperly acquired Nova's Confidential Information through a breach of his confidential relationship with Nova. Salazar took such Confidential Information in violation of his contractual obligations under the Confidentiality Agreement and the Assignment Agreement  as well as his common law fiduciary obligations to avoid misappropriating his employer's Confidential Information or using such Confidential Information for an improper purpose.

54.     Salazar was aware of Nova's policies and procedures relating to the Confidential Information, but nevertheless took it with malicious intent to compete directly against Nova. Further, Salazar has ignored multiple requests from Nova to promptly return the Confidential Information to Nova and to cease and desist from using it to compete against Nova.

55.     Upon information and belief, Salazar has used Nova's Confidential Information to equip Nova's competitors with an unfair advantage and to compete against Nova. Specifically, representatives of Nova have recently been informed by O'Rourke on multiple occasions that Salazar and Abarla were working for Sather and MacuMira between 2020 and 2022 (during the same period that Salazar and Abarla were paid approximately $200,000 by Nova while working as independent contractors for Nova) and that Sather and/or MacuMira has paid Salazar and/or Abarla "substantial sums," believed to be in the hundreds of thousands of dollars.

56.     As a result of Defendants' misappropriation, Nova has suffered actual or compensatory damages in the form of actual loss caused by Defendants' misappropriation as well as damages for unjust enrichment caused by such misappropriation that is not otherwise addressed in computation of Nova's damages for actual loss. Such damages include, but are not limited to, damages associated with the loss of Nova's confidential and proprietary technology and the use of such confidential and proprietary technology by Nova's competitors. In the alternative, Nova has suffered damages caused by Defendants' misappropriation measured by the imposition of liability for a reasonable royalty for Defendants' disclosure or use of Nova's trade secrets.

57.     Because Defendants' misappropriation was committed willfully and maliciously, Defendants are further entitled to, and seek, exemplary damages in an amount not to exceed two times the amount of its actual damages above.

58.     Nova is further entitled to, and seeks, equitable relief available under the TUTSA, including but not limited to issuance of a temporary and/or permanent injunction. Actual or threatened misappropriation may be enjoined as long as the order does not prohibit a person from using general knowledge, skill, and experience that person acquired during employment. Tex. Civ. Prac. & Rem. Code Ann. § 143A.003(a).  Because Salazar has continuously failed to return Nova's Confidential Information and has used such Confidential Information to compete against Nova by selling Nova's Confidential Information to Sather and/or MacuMira, there is sufficient evidence of actual and/or threatened use of Nova's Confidential Information. At this point, the only way to stop irreparable harm that would occur if Nova's Confidential Information were distributed or used by its competitors is to grant Nova injunctive relief prohibiting the further use or proliferation of the Confidential Information and requiring the prompt return of all such Confidential Information to Nova. Tex. Civ. Prac. & Rem. Code Ann. § 143A.003(a).

59.     Upon information and belief, Salazar used his ownership and control of Abarla to facilitate his misappropriation of Nova's Confidential Information and/or Abarla acted knowingly to aid and participate in such misappropriation. Accordingly, Abarla is jointly and severally liable with Salazar for his TUTSA violations.

## COUNT 2 – Misappropriation of Trade Secrets in Violation of the Defense of Trade Secrets Act ("DTSA")

60.     Plaintiffs re-allege and incorporate all factual allegations set forth above as if fully set forth herein.

61.     The elements of trade secret misappropriation under DTSA are: "(1) a trade secret; (2) misappropriation; and (3) use in interstate commerce."[4]

---

[4] 18 U.S.C. § 1836(b)(1).

62.     Under the DTSA, a "trade secret" may consist of any formula, pattern, device, or compilation of information used in one's business, which the owner takes reasonable measures to keep secret, and which derives economic value from not being generally known by others in competition with the trade secret holder. 18 U.S.C. § 1839(3). Under the DTSA, "misappropriation" is satisfied if disclosure of the trade secret is made, without consent, by a person who acquired the knowledge under circumstances giving rise to a duty to maintain its secrecy. 18 U.S.C. § 1839(5). "Improper means" includes breach of a duty to maintain secrecy, but does not include reverse engineering or independent derivation. 18 U.S.C. § 1839(6).

63.     "As a general matter, any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use.'" *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 326 (5th Cir. 2018) (quoting *Wellogix, Inc.* v. Accenture, L.L.P., 716 F.3d 867, 877 (5th Cir. 2013)). "Use" can be found where the exploitation includes "relying on the trade secret to assist or accelerate research or development." *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 498 (5th Cir. 2016) (citing *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721–22 (Tex. 2016) (holding that Texas follows "traditional trade secret law")). "[P]roof of the defendant's knowledge of the trade secret together with substantial similarities between the parties' products or processes may justify an inference of use by the defendant." *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 601 (5th Cir. 2015).

64.     "[T]he DTSA requires that the trade secrets relate to a product or service that is used in interstate commerce." *Providence Title Co. v. Truly Title, Inc.*, No. 4:21-CV-147-SDJ, 2021 WL 2701238, at *5 (E.D. Tex. Jul. 1, 2021) (citing 18 U.S.C.A. § 1836(b)(1)). "It is the underlying

product or service—not the trade secret—that must be used in or intended for use in instate commerce in order to assert a claim under the DTSA." *Id.*

65.     Nova developed and owned the Confidential Information concerning its AMD Technology and Nova Property defined in paragraphs 20 and 26 above.

66.     Nova spent thousands of hours designing, developing, and engineering its Confidential Information. Nova treated such Confidential Information as proprietary to its business and relied upon such Confidential Information to set itself apart from its competitors in the marketplace, which could obtain a significant advantage by gaining access to the Confidential Information and using it to compete against Nova without having to spend the time, energy, and resources to develop this Confidential Information on their own.

67.     Nova did not share this Confidential Information with the public or its competitors, but kept such Confidential Information secure at all times relevant to this Complaint. Specifically, Nova employed the following steps to secure its Confidential Information from disclosure:

- **Physical Barriers:** Nova keeps its Confidential Information in secured facilities with physical locks on the doors and controls access to those locked facilities, with keys accessible only to manager-level employees.

- **Digital Protections:** Nova also keeps Confidential Information digitally, including trademarks, patents, clinical final reports, and other data in a secured ShareVault account with password protection. Only the company's CEO can grant access to the ShareVault account and information in the ShareVault account is controlled by specific permissions granted to employees only on an as-needed basis.

68.     Salazar improperly acquired Nova's Confidential Information through a breach of his confidential relationship with Nova. Salazar took such Confidential Information in violation of his contractual obligations under the Confidentiality Agreement and the Assignment Agreement as

well as his common law fiduciary obligations to avoid misappropriating his employer's Confidential Information or using such Confidential Information for an improper purpose.

69.     Salazar was aware of Nova's policies and procedures relating to the Confidential Information, but nevertheless took it with malicious intent to compete directly against Nova. Further, Salazar has ignored multiple requests from Nova to promptly return the Confidential Information to Nova and to cease and desist from using it to compete against Nova.

70.     Upon information and belief, Salazar has used Nova's Confidential Information to equip Nova's competitors with an unfair advantage and to compete against Nova. Specifically, representatives of Nova have recently been informed by O'Rourke on multiple occasions that Salazar and Abarla were working for Sather and MacuMira between 2020 and 2022 (during the same period that Salazar and Abarla were paid approximately $200,000 by Nova while working as independent contractors for Nova) and that Sather and/or MacuMira has paid Salazar and/or Abarla "substantial sums," believed to be in the hundreds of thousands of dollars.

71.     Nova's Confidential Information is related to a product or service used in, or intended for use in, instate commerce. Specifically Nova's AMD Technology is intended for sale in other states, as well as other countries, including—primarily—Canada. Nova also maintained Confidential Information on secured computers, including computers provided to, and accessed by, Salazar for the performance of his job responsibilities, that were connected to, and utilized, the internet at all times during Salazar's employment.

72.     As a result of Defendants' misappropriation, Nova has suffered actual or compensatory damages in the form of actual loss caused by Defendants' misappropriation as well as damages for unjust enrichment caused by such misappropriation that is not otherwise addressed in

computation of Nova's damages for actual loss. Such damages include, but are not limited to, damages associated with the loss of Nova's confidential and proprietary technology and the use of such confidential and proprietary technology by Nova's competitors. In the alternative, Nova has suffered damages caused by Defendants' misappropriation measured by the imposition of liability for a reasonable royalty for Defendants' disclosure or use of Nova's trade secrets.

73.     Because Defendants' misappropriation was committed willfully and maliciously, Defendants are further entitled to, and seek, exemplary damages in an amount not to exceed two times the amount of its actual damages above.

74.     Nova is further entitled to, and seeks, equitable relief available under the DTSA, including but not limited to issuance of a temporary and/or permanent injunction. Because Salazar has continuously failed to return Nova's Confidential Information and has used such Confidential Information to compete against Nova by selling Nova's Confidential Information to Sather and/or MacuMira, there is sufficient evidence of actual and/or threatened use of Nova's Confidential Information. At this point, the only way to stop irreparable harm that would occur if Nova's Confidential Information were distributed or used by its competitors is to grant Nova injunctive relief prohibiting the further use or proliferation of the Confidential Information and requiring the prompt return of all such Confidential Information to Nova.

75.     Upon information and belief, Salazar used his ownership and control of Abarla to facilitate his misappropriation of Nova's Confidential Information and/or Abarla acted knowingly to aid and participate in such misappropriation. Accordingly, Abarla is jointly and severally liable with Salazar for his DTSA violations.

COUNT 3 – Conversion

76.     Plaintiffs re–allege and incorporate all factual allegations set forth above as if fully set forth herein.

77.     The elements of conversion are: "(1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for the return of the property." *Liberty Mut. v. Kinser*, 82 S.W.3d 71, 79 (Tex. App.—San Antonio 2002, pet. withdrawn).

78.     Nova owns its Confidential Information, which includes tangible property in the form of the AMD Technology devices and the various component parts of such devices, as well as valuable research and development data, technical data, product plans, systems, software, inventions, processes, formulas, technology, designs, drawings, engineering, and other related tangible property.

79.     Salazar assumed and exercised dominion and control over such property to the exclusion of and inconsistent with Nova's rights when he misappropriated it from Nova's offices in Palm Springs, California.

80.     Salazar subsequently refused to comply with Nova's lawful demands for the prompt return of such property, including most recently the Final Demand, and has caused damages to Nova as a result.

81.     Upon information and belief, Salazar used his ownership and control of Abarla to facilitate his misappropriation of Nova's Confidential Information and/or Abarla acted knowingly

to aid and participate in such misappropriation. Accordingly, Abarla is jointly and severally liable with Salazar for his conversion.

COUNT 4 – Breach of Contract

82.     Plaintiffs re-allege and incorporate all factual allegations set forth above as if fully set forth herein.

83.     The elements of breach of contract are: "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App.–San Antonio 2015, pet. denied).

84.     The Confidentiality Agreement is a valid and enforceable contract between Salazar and Nova.

85.     Nova performed its obligations under the Confidentiality Agreement by paying Salazar the required consideration and by providing Salazar with access to Confidential Information for the performance of his job duties.

86.     Upon information and belief, Salazar breached his obligations under the Confidentiality Agreement by disclosing and providing Nova's Confidential Information, including its AMD Technology to Nova's competitors, including MacuMira.

87.     As a result of Salazar's breach, Nova has suffered actual damages in the form of actual loss caused by Defendants' proliferation of Nova's Confidential Information to its competitors and the use of such Confidential Information by those competitors, including MacuMira, to compete against Nova.

88.     The Assignment Agreement is another valid and enforceable contract between Salazar and Nova.

89.     Nova performed its obligations under the Assignment Agreement by crediting Salazar as a co-inventor and paying Salazar in excess of $200,000 between 2016 and 2018 (in addition to the approximately $200,000 that Nova paid Salazar and Abarla between 2020 and 2022 as independent contractors).

90.     Upon information and belief, Salazar breached his obligations under the Assignment Agreement by failing to cooperate with and assist Nova in enforcing Nova's rights in the provisional patent assigned to Nova LLC by Salazar.

91.     As a result of Salazar's breach, Nova has suffered actual damages in the form of actual loss caused by Defendants' proliferation of Nova's Confidential Information to its competitors and the use of such Confidential Information by those competitors, including MacuMira, to compete against Nova.

COUNT 5 – Breach of Fiduciary Duty

92.     Plaintiffs re-allege and incorporate all factual allegations set forth above as if fully set forth herein.

93.     The elements of breach of fiduciary duty are: "(1) a fiduciary relationship; (2) a breach by the defendant of his fiduciary duty to the plaintiff; and (3) an injury to the plaintiff or a benefit to the defendant as a result of the defendant's breach." *E-Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 861 (Tex. App.–San Antonio Mar. 1, 2017, no pet.).

94.     Salazar owed Nova LLC a fiduciary duty as its employee with the title Vice-President of Engineering.

95.     Salazar breached his fiduciary duty to Nova LLC by misappropriating Nova LLC's Confidential Information or using such Confidential Information for an improper purpose, including to compete against Nova LLC.

96.     As a result of Salazar's breach, Nova has suffered actual damages in the form of actual loss caused by Defendants' proliferation of Nova's Confidential Information to its competitors and the use of such Confidential Information by those competitors, including MacuMira, to compete against Nova. Further, upon information and belief, Salazar has personally benefited and unjustly enriched himself through this breach of fiduciary duty by personally profiting off the sale of Nova LLC's Confidential Information. Accordingly, Nova seeks actual damages in addition to disgorgement of any sums wrongfully obtained by Defendants through their sale of Nova's property.

97.     Nova further seeks exemplary damages for Salazar's breach of fiduciary duty, which are supported by clear and convincing evidence of one or more of the following factors: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability; (4) the situation and sensibilities of the parties; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the defendant's net worth. Tex. Civ. Prac. & Rem. Code Ann. § 41.011(a); *McCullough v. Scarbrough, Medlin & Assocs., Inc.*, 435 S.W.3d 871, 912 (Tex. App.—Dallas 2014, pet. denied).

98.     Upon information and belief, Salazar used his ownership and control of Abarla to facilitate his misappropriation of Nova's Confidential Information and/or Abarla acted knowingly to aid and participate in Salazar's breach of fiduciary duty to his employer, Nova LLC. Accordingly, Abarla is jointly and severally liable with Salazar for his breaches of fiduciary duty.

## VI.  CONDITIONS PRECEDENT

99.     All conditions precedent to the relief requested in this pleading have occurred, have

been performed, have been waived, or have been rendered impossible.

## VII.  REQUEST FOR ATTORNEYS' FEES

100.     Plaintiffs request an award of costs and reasonable and necessary attorneys' fees

pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8), Tex. Civ. Prac. & Rem. Code Ann.

§ 134A.005, and/or 18 U.S.C. § 1836(b)(3)(D).

## VIII. APPLICATION FOR INJUNCTIVE RELIEF

101.     Plaintiffs re–allege and incorporate all factual allegations set forth above as if fully set

forth herein.

102.     Plaintiffs further seek a temporary injunction from the Court following an

evidentiary hearing and, upon final trial of the merits, a substantially similar permanent injunction

to halt Defendants' tortious activities. As is found in the above-referenced causes of action, Plaintiffs

have shown a probable right to recovery from Defendants by providing evidence of the respective

misappropriation of trade secrets, conversion, breaches of contract, and breach of fiduciary duty,

and that Defendants' conduct is deliberate and intended to continue into the future. Furthermore,

Plaintiffs have demonstrated that Defendant Salazar has knowingly violated his Confidentiality

Agreement and other obligations to Plaintiffs. Plaintiffs have also demonstrated a probable remedy

in the form of its theories of liability, request for injunctive relief, and the facts supporting said

actions.

103.     Plaintiffs have also demonstrated the inadequacy of monetary damages or other

remedies at law. Plaintiffs have established that Defendants' conduct, including Salazar's immediate

dissemination of known Confidential Information belonging to Nova to Nova's competitors, and his refusal to return such Confidential Information even after being put on notice of the discovery of his misdeeds, supports the issuance of a temporary injunction pursuant to the TUTSA and the DTSA. In the event that the Court does not issue the injunctive relief sought by Plaintiffs, Defendants will continue to use and benefit from their illicit and improper conduct and Plaintiffs will suffer irreparable and imminent harm from Salazar's continued breaches of contract, breaches of fiduciary duty, conversion, and misappropriation of trade secrets. The scope of all such damage is virtually impossible to prove within the certainty required by law.

104.    The Court's denial of Plaintiffs' requested relief will result in significantly greater harm to the Plaintiffs than Defendants will suffer if the Court grants relief. By granting relief, the Court will stop Defendants from continuing conduct that, by law and contract, they are not permitted to do or for which they have no legal right. Further, Defendants will be able to continue to work in the medical technology industry, such that Defendants are not prohibited from making a living, but will only be prohibited from using or profiting from Plaintiffs' Confidential Information. On the other hand, if such relief is denied or withheld, Plaintiffs will suffer mounting damages for which they have no adequate remedy at law, the continued threatened use and/or spread of its trade secrets and Confidential Information to its competitors, and will suffer damages for which it could not reasonably expect to recover from Defendants due to the difficulty in calculating monetary damages.

105.    To enforce Plaintiffs rights and protect it against irreparable injury, Plaintiffs pray that the Court set their application for a temporary injunction for a hearing as soon as practicable after Plaintiffs have been afforded a reasonable opportunity to conduct expedited discovery and that,

upon such hearing, the Court enjoin the Defendants (and anyone acting directly, indirectly, and/or in concert with any of the Defendants) from the following acts:

> A. Destroying, altering or otherwise accessing any Confidential Information, AMD Technology, Nova Property, or other property belonging to Nova in Defendants' possession, custody, or control. This includes destroying, accessing or altering any device, thumb drive, computer, phone, server, or other digital tool or instrument that can access Plaintiffs' Confidential Information, AMD Technology, or Nova Property; and

> B. Disseminating or otherwise using Confidential Information, AMD Technology, Nova Property, or other property belonging to Nova that Salazar obtained while working at Nova LLC, and Defendants must immediately return any such Confidential Information, AMD Technology, Nova Property, or other property belonging to Nova they have in their possession, custody, or control within seventy-two (72) hours;

106.    Plaintiffs request that this Court set their application for a temporary injunction for hearing within the time period allowed by law and that Defendants be commanded to appear and show cause why a temporary injunction should not issue as Plaintiffs have requested. Plaintiffs also request that, following a trial on the merits, in addition to relief sought at law in the form of damages, this Court permanently enjoin Defendants in a manner consistent with the temporary injunction sought by Plaintiffs herein.

107.    To the extent required by the Court, Plaintiffs are willing to post a reasonable bond. In the event the Court requires a bond, Plaintiff request that the bond be $500.00.

## IX.   PRAYER

108.    For the foregoing reasons, Plaintiffs pray that Defendants be cited to appear and answer herein and that Plaintiffs be awarded judgment against Defendants, jointly and severally, as set forth above for their actual or compensatory damages and their economic damages in an amount

to be proven at trial, together with all exemplary damages to which Plaintiffs are entitled, applicable pre-judgment interest at the statutory rate, reasonable and necessary attorneys' fees, and taxable costs of Court.

109.   Plaintiffs further pray for the remedy of disgorgement of all sums improperly obtained by either or both Defendants through the sale or licensing of any of Nova's Confidential Information, AMD Technology, Nova Property, or other property belonging to Nova that Salazar obtained while working at Nova LLC.

110.   Plaintiffs further pray for post-judgment interest on each of the foregoing sums at the statutory rate.

111.   Plaintiffs further pray for a temporary injunction and a permanent injunction enjoining the Defendants (and anyone acting directly, indirectly, and/or in concert with any of the Defendants) from the following acts:

> A. Destroying, altering or otherwise accessing any Confidential Information, AMD Technology, Nova Property, or other property belonging to Nova in Defendants' possession, custody, or control. This includes destroying, accessing or altering any device, thumb drive, computer, phone, server, or other digital tool or instrument that can access Plaintiffs' Confidential Information, AMD Technology, or Nova Property; and
>
> B. Disseminating or otherwise using Confidential Information, AMD Technology, Nova Property, or other property belonging to Nova that Salazar obtained while working at Nova LLC, and Defendants must immediately return any such Confidential Information, AMD Technology, Nova Property, or other property belonging to Nova they have in their possession, custody, or control within seventy-two (72) hours;

112.   Plaintiffs further pray for any and all other relief to which they may be justly entitled.

Respectfully submitted,

**KANE RUSSELL COLEMAN LOGAN PC**


By:      */s/ Brian Clark*
       **Brian W. Clark**
       bclark@krcl.com
       State Bar No. 24032075
       **Andrew D. Robertson**
       drobertson@krcl.com
       State Bar No. 24090845

901 Main St.
Suite 5200
Dallas, Texas 75202
Telephone:      (214) 777-4200
Facsimile:      (214) 777-4299

***Counsel for Plaintiffs***